# Cody *v.* The State.

4   27
74  678

It will be presumed, that the court, entrusted with the duty of empannelling grand jurors, selected good and lawful men. The party may destroy this presumption by challenge and proof before the trial; but the question cannot be afterwards raised in another court.

The record must show that the grand jurors were sworn.

If the record show that one of the grand jury was sworn as foreman, it will be evidence of his appointment as such.

It was held good ground for a new trial that one of the jurors, after he was summoned and before trial, declared that should he be of the jury, he did not think he could clear the accused, but would be bound to find him guilty.

The indictment will be bad, unless the name of the prosecutor is endorsed thereon.

ERROR to the circuit court of Perry county.

Hays and M'Clung, for plaintiff in error.

Collins, Attorney General, for the State, cited Chitty's Crim. Law, 333, 4, 5; Woodsides *v.* The State, 2 Howard's Rep. *655*; Chitty's Crim. Law, 266; Walker's Rep. 392.

Mr. Justice TROTTER delivered the opinion of the court.

This case stands upon a writ of error to the circuit court for the county of Perry. The record states that at the October term of that court, held in the year 1837, a bill of indictment was found by the grand jury, charging the plaintiff in error with the murder of one Henry Rodgers. That at the April term following, a special *venire facias*, for twenty jurors to try the prisoner, was awarded. That a jury at the same term was empannelled and sworn to try the issue made up on the plea of not guilty, which had been filed by Cody, at the preceding term, and that said jury found a verdict of guilty against him at the same term. That the court thereupon proceeded and pronounced final judgment of death against him with the usual order of execution.

[*Cody v. The State.*]

The first error complained of in the proceedings of the court below in this cause is, that the grand jury who found the indictment were not good and lawful men, of the county of Perry. The grand jurors in each county of this State are directed to be selected by *lot* from the whole number of jurors summoned and attending the court under the *venire* for the term. The statute points out the method by which the jurors who are to compose the *venire* shall be selected, and prescribes their qualifications. They are to be selected by the sheriff and clerk under the direction and control of the court, from the returns of the assessor and collector of taxes, and are to be freeholders or householders of the county in which they are required to serve. It is to be presumed that the court entrusted with the selection of the *venire* has done its duty by placing none upon it except such as are good and lawful men of the county according to the directions of the act. It is competent for any party, whose rights are to be affected by the action of the jury, to destroy this presumption by challenge and proof tendered at the time. If he is silent, however, he cannot afterwards raise the objection in another court. All exceptions to the jurors must be taken at the time of the trial. To sustain this position the court might refer to many adjudications of the highest courts in other states. 1 Chitty's Crim. Law, 333.

They do not deem this assignment of error sufficient to affect the judgment.

It is insisted in the second place, that there is no evidence upon the record that the grand jury were ever sworn by the court. The record, without any notice of the original *venire*, proceeds to state that fifteen persons, naming them, were drawn as a grand jury, and that A. E. Denham (one of the number) was sworn as foreman of the same. There is no statement that A. E. Denham was appointed foreman by the court, nor is there any statement that the remainder of the jurors took the oath required by law of grand jurors.

This we deem a fatal objection to the indictment. The constitution of this country provides that no man shall be held to answer for any capital or infamous offence until he shall have been first charged with the same by a grand jury of the proper county. Our laws have, with great precision prescribed the method by

[Cody *v.* The State.]

which this body, entrusted with such high powers, over the liberty and life of the citizen shall be organised. They are required to be selected by lot, under the direction of the court, from the whole number of jurors summoned and in attendance by virtue of the *venire facias*, for the term. When thus selected they shall take an oath, the form of which is particularly prescribed by law. In order to give system and certainty to their proceedings, the court is directed to appoint one of their number to act as their foreman. This appointment constitutes him the organ through which their inquisitions and proceedings are reported to the court, and particular duties are devolved upon him distinct from those of the other members of the jury. He must report all bills which may be submitted to the jury and state, over his name to be endorsed on the same as foreman, whether they are *true* or *not.* His functions are, therefore, highly important, and it should clearly appear from the record that he has been designated by the court and sworn to act in this capacity. It is his return as foreman, which places the bill of indictment in possession of the court and apprises it that the grand jury have found it to be true. It is not deemed necessary by us to decide, whether, if the record or caption of the indictment should show, that the grand jury in a body returned the bill of indictment into court with their finding endorsed upon it or specially entered of record it would not be sufficient. In the absence of such a statement it must appear of record that the foreman returned the bill, and of course that he was authorised to act as such. In this case there is no evidence of the appointment of A. E. Denham as foreman, except the statement that he was sworn as such. And it is an inference which is deemed consistent with the record that he was appointed. His appointment is included in the fact of his taking the oath. This was the determination of this court in the case of Woodsides *v.* The State, decided at the January term in 1837, and we do not feel inclined to disturb it. But there is no statement that the other members of the grand jury were sworn, and we do not feel authorised to infer it from any thing on the record. The fact that A. E. Denham was sworn as foreman of the grand jury, cannot by any rule of construction or inference known to us, include the other and distinct fact that the residue of the panel took an oath also. The recital of this fact in

3*

[Cody *v.* The State.]

the bill of indictment cannot supply the omission of it in the record. The record may aid the indictment, but not *e converso.* For the authority of the jury to find the indictment must be contained in the record, and the bill becomes no part of the record until it is acted upon and returned into court in the manner prescribed by law.

We will proceed to notice two of the other assignments of error relied on by the plaintiff. One is that the indictment is defective because there has not been endorsed upon it the name of the prosecutor. The 69th sect. of the act " for the punishment of crimes and misdemeanors," Rev. Code, 309, makes it the duty of the attorney general, or district attorney, to mark upon all bills of indictment the name of the prosecutor or prosecutors. This statute was designed to protect the state against the payment of costs for frivolous and malicious prosecutions, by affording certain record evidence of the *person* who had perverted the criminal jurisprudence of the country from its true objects and sought to make it a means to gratify his malice and revenge. It was manifestly designed to operate as auxiliary to a previous provision contained in the 67th sect. of the same act, by which it is provided that if the state fail in the prosecution of any inferior offence, the court may, if the prosecution appear to be frivolous or malicious, order the prosecutor to pay costs, &c. This act had another most important and salutary object in view, and that was to enable a party against whom a malicious and vexatious prosecution is instituted, to ascertain, with certainty, the hand from whence the injury to his reputation has proceeded. 2 Bibb's Rep. 210; 1 Ibid. 355. But, these objects may be defeated by a neglect on the part of the officers of the state to comply with the directions of the statute. We are of opinion, therefore, that this indictment is bad for that reason.

They are clearly of opinion that, on the other ground which it was proposed to examine by the court, the circuit court ought to have awarded a new trial to the defendant. The juror R. J. Patrick was not competent to try the prisoner. This is made manifest from the affidavit of William Snow, which is a part of the record. Jurors should be, in the language of the law, *omni exceptione majores*. That was not the condition of the juror in

[Cody *v.* The State.]

this instance. He had formed and expressed an opinion against the prisoner. It will not do to say in answer to this objection that his opinion may have been a mere hypothetical one, founded on mere loose rumor. When examined on his *voir dire*, he should have stated the fact, and the court would have been enabled to determine upon the character of it, and whether his mind was laboring under any undue bias, unfavorable to an impartial examination and decision of the case of the prisoner. But the record shows that he denied, when asked by the court, that he had formed or expressed any opinion of the prisoner's case; yet, we are furnished by the same record with proof of the fact that he had expressed an impression highly prejudicial to Cody. He declared, and that too after he was summoned by the officer to attend the court as a juror, that if he should be upon the jury, " he did not think he could clear him, but should be bound to find him guilty." A due regard to the sanctity of the trial by jury, and the constitutional right which has been guaranteed to every man to a trial, in all cases of the kind before the court, by an impartial jury of this country, demanded, as we conceive, a new trial. M'Kinley *v.* Smith, Harding's Rep. 167.

The judgment of the court below must, therefore, be reversed and the cause remanded, and a new trial granted by the circuit court of Perry county.